FRANCISCO A. ARRILLAGA, ETC., recurrente, *v.* EL REGISTRA-
DOR DE LA PROPIEDAD DE BAYAMÓN, recurrido.

Número 1306.

*Sometido:* 1 de febrero de 1954.  *Resuelto:* 30 de abril de 1956.

*Antonio Riera, A. Rivas Rosario, Alberto Ferrer, R. Cadilla Bis-
combe* y *Félix Bello,* abogados del recurrente; el Registrador
recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opi-
nión del Tribunal.

Al Registrador de la Propiedad de Bayamón le fué pre-
sentada, para su anotación en el Registro de Contratos
Agrícolas de su demarcación—que comprende, entre otros,
los términos municipales de Toa Baja, Dorado, Toa Alta, Vega
Baja y Vega Alta—copia certificada de una escritura sobre
Contrato de Préstamo Refaccionario celebrado entre el Banco
Popular de Puerto Rico, representado por su Vicepresidente
y Gerente Ramón Magriñá, de una parte, y la Autoridad de

Tierras de Puerto Rico, representada por su Director Ejecutivo, Francisco A. Arrillaga, de la otra. Arrillaga compareció, además, en su carácter de Agente, debidamente autorizado, de 83 fincas de beneficio proporcional creadas bajo las disposiciones del Título IV de la Ley de Tierras de Puerto Rico—núm. 26 de 12 de abril de 1941, según ha sido enmendada—las cuales se comprendían en el referido contrato como deudoras refaccionarias.

De las 83 fincas de beneficio proporcional incluídas en el referido contrato, 22 de ellas radican en los términos municipales de Toa Baja, Toa Alta, Dorado, Vega Baja y Vega Alta; y fué para su anotación en el Registro de Contratos Agrícolas—en lo concerniente a dichas 22 fincas de su demarcación—que se presentó al Registrador recurrido el mencionado contrato, consignándose sellos de rentas internas por valor de $349.75 como derechos a devengarse por dicha anotación. El Registrador suspendió la anotación del documento presentádole, mediante la siguiente nota:

"Suspendida la inscripción de este documento en cuanto a las 22 fincas que corresponden a la demarcación de este Registro por no haberse consignado el total de los derechos que el mismo devenga montante a $426.75, según así lo dispone la sec. 11 de la Ley núm. 167 aprobada en 14 de mayo de 1943, ya que el préstamo que garantiza es por $1,658,930 según las cláusulas 7 y 29 de dicho documento, y extendida entre tanto anotación por 120 días, de acuerdo con lo dispuesto en la Ley núm. 39 de 23 de abril de 1928 por nota al margen del asiento de presentación 167 del Libro 30."

El recurrente nos pide que revoquemos la nota transcrita por ajustarse a la ley los derechos por él consignados en el Registro para la anotación interesada.

El Registrador sostiene su nota con el argumento de que la base para determinar los derechos a devengarse por la anotación del contrato, en cuanto a las 22 fincas de su demarcación, es el monto total del préstamo refaccionario concedido por el Banco Popular a la Autoridad de Tierras, o sea, la cantidad de $1,658,930; que de conformidad con la sec. 11 de la

Ley de 10 de marzo de 1910, según enmendada por la Ley núm. 167 de 14 de mayo de 1943, ($^1$) dicho contrato devenga derechos por la suma de $416.25; y que, en adición, comprendiendo la anotación 22 fincas, el recurrente debe pagar 50 centavos por cada una de las 21 anotaciones concisas que por las 21 fincas restantes debe practicar, conforme a la propia sec. 11 de la citada ley y su mencionada enmienda, ($^2$) por lo cual el total de los derechos legales a devengarse es la suma de $426.75.

■ No tiene razón el recurrido. Al hacer el cálculo de los derechos a devengar partió, en primer término, de una base equivocada. Mediante el Contrato de Préstamo Refaccionario aquí envuelto, la Autoridad de Tierras tomó a préstamo del Banco Popular la suma de $1,658,930 para refacción de sus dos factorías azucareras, préstamo que garantizó con la participación industrial en los azúcares a producir dichas dos factorías—Central Cambalache, en Arecibo, y Central Plazuela, en Barceloneta—ambas dentro de la demarcación del Registro de Contratos Agrícolas de Arecibo. Es en dicho Registro, y no en el de Bayamón, donde se devengan los derechos correspondientes a la anotación, en el mismo, del contrato refaccionario, en cuanto al préstamo de la Autoridad de Tierras.

■ Cada una de las 83 fincas de beneficio proporcional organizadas por la Autoridad de Tierras, tomó también a préstamo, para fines de refacción—y garantizó con sus cañas—una cantidad específica que en el propio contrato—cláu-

---

($^1$) La parte pertinente de dicha sección dispone:

"Cuando la cuantía del contrato exceda de $1,000, se cobrará $2.00 por los primeros $1,000 y 25 centavos adicionales por cada $1,000 o fracción de $1,000."

($^2$) En lo pertinente, dicha sección provee:

"Por cada anotación o nota marginal concisa que deba practicarse se devengarán 25 centavos cuando el importe del préstamo no exceda de $1,000; y 50 centavos cuando exceda de $1,000; Disponiéndose, que cuando el contrato de refacción sea anotado en más de dos libros por radicar las fincas en diferentes términos municipales, se cobrarán derechos por una anotación extensa y las demás concisas".

sula 8 de la escritura—se consigna expresamente como "principal". La suma de los préstamos de las 22 fincas pertenecientes a la demarcación del Registro de Contratos Agrícolas de Bayamón es de $1,390,123.48. Y el importe total de los préstamos de las 83 fincas comprendidas en el contrato, según la referida cláusula contractual, es el de $5,341,070, como "principal". La base, pues, para calcular los derechos que devenga la anotación del contrato en el Registro de Contratos Agrícolas de Bayamón—en cuanto a las 22 fincas de su demarcación—es la de $1,390,123.48, que corresponde a la suma de los préstamos refaccionarios que garantizan dichas 22 fincas.

Conforme a la ley, el Registrador recurrido cobrará derechos en la siguiente forma: 25 centavos por el asiento de presentación; dos dólares por los primeros mil dólares del monto del préstamo refaccionario de las 22 fincas correspondientes al Registro de Contratos Agrícolas de Bayamón; $347.50 por el balance de $1,389,123.48, a razón de 25 centavos por cada mil dólares adicionales o fracción de mil dólares, o sea, $349.75 en total, que es, precisamente, la cantidad que en sellos de rentas internas consignó el recurrente al presentar al Registro el contrato de referencia. No procede el cobro de derechos por 21 anotaciones concisas, luego de anotado el contrato. Bajo la Ley núm. 139 de 13 de mayo de 1943, enmendatoria de las secs. 6, 7 y 14 de la Ley de 10 de marzo de 1910, sólo se practica una anotación en el Registro de Contratos Agrícolas que es única, no importa el número de fincas que comprenda el documento.(³) La Ley

---

(³) En la sec. 7 de la referida ley se dispone el contenido, tanto del Asiento de Presentación como de la *Anotación* en sí, y se provee, entre otras cosas, que los libros del Registro de Contratos Agrícolas tendrán "al final un índice impreso con suficiente número de páginas y sus correspondientes encasillados para hacer constar el nombre de los contratantes, sitio donde radica la finca, número de cuerdas y el folio en que aparece anotado el contrato".

Y más adelante, al especificar cómo se practicará la anotación en dicho Registro dispone: "Dicha anotación se practicará *relacionando la finca o fincas objeto del contrato* . . . . ."

139 reformó, en efecto, el sistema de anotaciones de contratos agrícolas. Verificada la anotación única, la ley refiere al interesado al propio documento comprensivo del contrato, del cual queda numerado y archivado un duplicado en el legajo de contratos agrícolas. Dicho contrato forma parte integrante de la anotación misma, cosa que se hace constar expresamente en la propia anotación, por disposición expresa de la ley.

Puede prestarse a confusión el hecho de que el 14 de mayo de 1943—un día después de aprobada la Ley 139, que por ser de vigencia inmediata comenzó a regir el 13 de mayo de 1943—fué aprobada la Ley 167 anteriormente citada, con vigencia a los 90 días después de su aprobación, y por ella se enmendó el último párrafo del inciso 'b' de la sec. 11 de la Ley de 10 de marzo de 1910, según hasta entonces enmendada, quedando su texto según se consigna anteriormente en la nota (2).

Sin embargo, si ha de prevalecer el sistema de anotación única introducida por la reforma de la Ley 139, deja de tener virtualidad la referida disposición, pues una vez que no hay que practicar anotación o nota marginal concisa, no procede cobrar derechos por éstas. El precepto de la ley sobre la anotación única, que es una ley de reforma en el trámite registral, prevalece sobre la disposición de la ley sobre el cobro de derechos que, además de ser una ley de arancel, resulta innecesaria.

*Se revoca la nota recurrida y se ordena al Registrador que proceda a la anotación del Contrato de Préstamo Refaccionario objeto de este recurso, según corresponda.*